**IN THE UNITED STATES DISTRICT COURT FOR THE**
**WESTERN DISTRICT OF MISSOURI**
**CENTRAL DIVISION**

| | | |
|---|---|---|
| SHANNON MCCALL | ) | |
| O/B/O TAMARA MCCALL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 2:17-CV-04005-WJE |
| | ) | |
| NANCY A. BERRYHILL, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER

Plaintiff Tamara McCall seeks judicial review[1] of a final administrative decision of the Commissioner of Social Security (Commissioner) denying her disability insurance benefits (DIB) under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq*. Ms. McCall contends that the administrative record (AR) does not contain substantial evidence to support the Commissioner's decision that she was not disabled during the relevant period. For the reasons that follow, the Commissioner's decision will be reversed and benefits will be awarded.

## I. Background

Ms. McCall was born on May 8, 1970. She had previously worked as a phlebotomist, lab technician, and pharmacy technician before moving into the role of stay-at-home mother. AR 877-888. Ms. McCall protectively filed her application for DIB on March 19, 2007. AR 73-82. Her claim was initially denied on July 23, 2007, and she requested a hearing before an Administrative Law Judge (ALJ) on August 30, 2007. AR 69. Ms. McCall appeared and testified at a hearing before the ALJ on October 22, 2008. AR 11. On March 13, 2009, the ALJ issued a decision that Ms. McCall was not under a "disability" as defined in the Social Security Act. AR 11-18. On September 24, 2009, the Appeals Council of the Social Security Administration denied Ms. McCall's request for review. AR 1-3. This Court granted Ms. McCall's motion to remand for further proceedings on September 29, 2010. AR 418-419. On November 17, 2011, following remand and two additional hearings, an ALJ again found that Ms.

---

[1] With the consent of the parties, this case was assigned to the United States Magistrate Judge pursuant to the provisions of 28 U.S.C. § 636(c).

McCall was not under a disability for the relevant period. AR 400-408. The Appeals Council denied Ms. McCall's request for review on August 30, 2012. AR 394-396. This Court again remanded for further proceedings by the ALJ on March 30, 2014. AR 921-924. On December 28, 2015, following another hearing, an ALJ again found that Ms. McCall was not under a disability during the relevant period. AR 877-888. The Appeals Council denied Ms. McCall's request for review on November 18, 2016. AR 856-859. Thus Ms. McCall has exhausted all of her administrative remedies, and the ALJ's decision stands as the final decision of the Commissioner.

On January 11, 2017, Ms. McCall filed a complaint in this Court seeking review of the Commissioner's decision. (Doc. 1). The case was originally assigned to United States Magistrate Judge Matt J. Whitworth. The case was reassigned to the undersigned on August 31, 2017. (Doc. 22). The parties, shortly thereafter and within 10 days, consented to the exercise of jurisdiction by the undersigned. (Doc. 33). The parties have fully briefed the issues and an oral argument was held on January 9, 2018.

## II. Disability Determination and the Burden of Proof

Under the authority of the Social Security Act, the Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is disabled. 20 C.F.R. §§ 404.1520(a) and 416.920(a); See Kirby v. Astrue, 500 F.3d 705, 707 (8th Cir. 2007). The steps are followed in order. If it is determined that the claimant is or is not disabled at a particular step of the evaluation process, the evaluation then will not go on to the next step.

At step one, the Commissioner must determine whether the claimant is engaging in substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(i) and 416.920(a)(4)(i). Substantial gainful activity (SGA) is defined as work activity that is both substantial and gainful. "Substantial work activity" is work activity that involves doing significant physical or mental activities. 20 C.F.R. § 404.1572(a). "Gainful work activity" is work that is usually done for pay or profit, whether or not a profit is realized. 20 C.F.R. § 404.1572(b). If the claimant is engaged in SGA, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(i) and 416.920(a)(4)(i). If the claimant is not engaging in SGA, the analysis proceeds to the second step.

At step two, the Commissioner must determine whether the claimant has a medically determinable severe impairment that significantly limits the claimant's physical or mental ability

to perform basic work activities. Dixon v. Barnhart, 353 F.3d 602, 605 (8th Cir. 2003). An impairment or combination of impairments is not severe when medical and other evidence establish only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on an individual's ability to work. Kirby, 500 F.3d. at 707; 20 C.F.R. §§ 404.1521 and 416.921. If the claimant does not have a severe medically determinable impairment or combination of impairments, the claimant is not disabled. If the claimant has a severe impairment or combination of impairments, the analysis proceeds to the third step.

At step three, the Commissioner must determine whether the claimant's impairment or combination of impairments is of a severity to meet or medically equal the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P appendix 1. 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526. If the claimant's impairment or combination of impairments is of a severity to meet or medically equal the criteria of a listing and meets the duration requirement, the claimant is disabled. If it does not, the analysis proceeds to the next step.

At step four, the Commissioner will assess the claimant's residual functional capacity (RFC) to determine the claimant's ability to do physical and mental work activities on a sustained basis despite limitations from claimant's impairments. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1545(a)(4), 416.920(a)(4)(iv), 416.945(a)(4). The claimant is responsible for providing evidence to the Commissioner, but the Commissioner is responsible for developing the claimant's complete medical history, arranging for consultative examination, and assisting claimant with gathering other medical evidence. 20 C.F.R. §§ 404.1545(a)(3) and 416.945(a)(3). If a claimant retains the RFC to perform past relevant work, then the claimant is not disabled. If the claimant is unable to do any past relevant work or does not have any past relevant work, the analysis proceeds to the fifth and last step.

At step five, if the claimant's RFC will not allow the claimant to perform past relevant work, then the burden shifts to the Commissioner to determine whether the claimant is able to do any other work considering claimant's RFC, age, education, and work experience. If the claimant is able to do other work, the claimant is not disabled. If the claimant is not able to do other work and meets the duration requirement, the claimant is disabled. Although the claimant generally continues to have the burden of proving disability at this step, a limited burden of going forward with the evidence shifts to the Commissioner. In order to support a finding that a claimant is not disabled at this step, the Commissioner is responsible for providing evidence that

demonstrates that other work exists in significant numbers in the national economy that the claimant can do given the RFC, age, education, and work experience. 20 C.F.R. §§ 404.1512(g), 404.1560(c), 416.912(g) and 416.960(c). (Doc. 6).

### III. The ALJ's Findings

The ALJ made the following findings:

1. The claimant meets the insured status requirements of the Social Security Act through March 31, 2007.

2. The claimant did not engage in substantial gainful activity during the period from her alleged onset date of August 15, 2001, through her date last insured of March 31, 2007. (20 CFR 404.1571 *et seq.*).

3. Through the date last insured, the claimant had the following impairments that were severe because they caused more than minimal limitation in her ability to function: chronic pain syndrome; obesity; pelvic inflammatory disease; and irritable bowel syndrome. (20 CFR 404.1520(c)).

4. Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. Through the date last insured, claimant had the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except she could lift up to 10 pounds occasionally and less than 10 pounds frequently. In an eight-hour workday, she could stand/walk for up to two hours, sit for up to six hours, and needed a sit/stand option. She could not have climbed ladders, ropes or scaffolds, and could have occasionally stooped, crouched, knelt, crawled, and climbed ramps and stairs. She needed to avoid concentrated exposure to fumes, odors, dust, and gasses, all use of hazardous machinery, and all exposure to unprotected heights. She could not drive as part of her job duties, and was limited to simple, routine work, with no production quotas and with emphasis on per shift rather than per hour basis requirements.

6. Through the date last insured, the claimant was unable to perform any past relevant work. (20 CFR 404.1565).

7. The claimant was born on May 8, 1970, and was 36 years old, which is defined as a younger individual age 18-49, on the date last insured. (20 CFR 404.1563).

8. The claimant has at least a high school education and is able to communicate in English. (20 CFR 404.1564).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that claimant is "not disabled," whether or not claimant has transferable job skills. (20 CFR 404.1563).

10. Through the date last insured, considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform. (20 CFR 404.1569, 404.1569(a)).

11. Claimant was not under a disability as defined in the Social Security Act, at any time from August 15, 2001, the alleged onset date, through March 31, 2007. (20 CFR 404.1520(g)). AR 877-888.

## IV. Standard of Review

The Eighth Circuit has set forth the standard for the federal courts' judicial review of denial of benefits, as follows:

> Our role on review is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. Substantial evidence is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion. In determining whether existing evidence is substantial, we consider evidence that detracts from the Commissioner's decision as well as evidence that supports it. As long as substantial evidence in the record supports the Commissioner's decision, we may not reverse it because substantial evidence exists in the record that would have supported a contrary outcome or because we would have decided the case differently.

Baker v. Barnhart, 457 F.3d 882, 892 (8th Cir. 2006).

The claimant has the initial burden of establishing the existence of a disability as defined by 42 U.S.C. § 423(d)(1). See Roth v. Shalala, 45 F.3d 279, 282 (8th Cir. 1995). To meet the statutory definition, "the claimant must show (1) that he has a medically determinable physical or mental impairment which will either last for at least twelve months or result in death, (2) that he is unable to engage in any substantial gainful activity, and (3) that this inability is the result of his impairment." McMillian v. Schweiker, 697 F.2d 215, 220 (8th Cir. 1983).

When reviewing the record to determine if there is substantial evidence to support the administrative decision, the court considers the educational background, work history and present age of the claimant; subjective complaints of pain or other impairments; claimant's description of physical activities and capabilities; the medical opinions given by treating and

examining physicians; the corroboration by third parties of claimant's impairments; and the testimony of vocational experts when based upon proper hypothetical questions that fairly set forth the claimant's impairments.  McMillian, 697 F.2d at 221.

## V. Discussion

Ms. McCall asserts that remand is appropriate because the ALJ failed to provide a RFC that was supported by substantial evidence on the record as a whole; and that the ALJ's ultimate decision against disability failed to meaningfully address Ms. McCall's medical records.  The Government responds in opposition arguing that substantial evidence supports the determinations by the ALJ, and therefore affirmance of the ALJ's decision is proper.  After consideration of the parties' arguments and a full review of the record, this Court finds the ALJ's decision is not supported by substantial evidence on the record as a whole. In fact, the Court finds that the record "overwhelmingly supports" a finding of disability and, therefore, reversal is required for the award of benefits.

"Ordinarily, when a claimant appeals from the Commissioner's denial of benefits and we find that such a denial was improper, we, out of 'our abundant deference to the ALJ,' remand the case for further administrative proceedings.  Consistent with this rule, we may enter an immediate finding of disability only if the record 'overwhelmingly supports' such a finding." See Papesh v. Colvin, 786 F.3d 1126, 1135 (8th Cir. 2015) (quoting Buckner v. Apfel, 213 F.3d 1006, 1011 (8th Cir. 2000)).

The Court finds that substantial evidence on the record as a whole "overwhelmingly supports" a finding of disability.  The Court finds substantial evidence on the record as a whole of debilitating pelvic pain and severe medication issues that renders Ms. McCall disabled.  On December 3, 2000, Ms. McCall was seen for the second time in five months in the emergency room at Providence Everett Medical Center in Everett, Washington for complaints of severe pelvic pain in the left abdomen that was diagnosed as pelvic inflammatory disease. AR 643-644. After the initial diagnosis, Ms. McCall was seen for pelvic pain for the next 14 years. AR 1209. On April 7, 2006, Dr. Breton Barrier, an OBGYN, made the diagnosis that Ms. McCall was suffering from "musculoskeletal pain of her right lateral rectus muscle." AR 288.  Dr. Barrier said that he was "impressed with Tamara's pain on her abdominal wall during her pelvic exam." AR 287. This diagnosis is significant because Ms. McCall had ten previous incorrect diagnoses that focused on internal issues including pelvic inflammatory disease, acute pelvic pain, chronic

pelvic pain, and pain with ovulation. AR 635, 645, 678, 302. The ALJ attempts to discount Dr. Barrier's opinion by pointing out test by Dr. Lynn Wung had negative results for "gyn" and "pelvic inflammatory disease." AR 884. Dr. Wung, Ms. McCall's family physician, was treating Ms. McCall for adhesions which are consistent with Dr. Barrier's musculoskeletal conclusions. AR 687. The ALJ's findings are not supported by substantial evidence because Dr. Wung and Dr. Barrier's opinions are not in conflict.

The ALJ's issued RFC cannot be supported by substantial evidence on the record as a whole because it improperly assesses the evidence of Ms. McCall's pelvic pain. The ALJ's finding and the Commissioner's argument strongly rely on many of Ms. McCall's pelvic pain and medication issues occurring after her date last-insured. (Def. Br. 4-5). As noted above, the proper diagnosis and treatment of Ms. McCall's pelvic pain began prior to the date last-insured. However, the Court is not persuaded by the Commissioner's argument that subsequent treatment reports regarding the same underlying condition should be ignored or given limited weight because they fall after the date last-insured. "Evidence of a disability subsequent to the expiration of one's insured status can be relevant, however, in helping to elucidate a medical condition during the time for which benefits might be rewarded." See Ray v. Astrue, 2011 U.S. Dist. LEXIS 29024 (W.D. Ark. 2011) (citing Fowler v. Bowen, 866 F.2d 249, 252 (8th Cir.1989) (subsequent reports reveal Fowler's condition to be a seriously limiting and deteriorating one. Most notably, in February 1985, less than one year after the expiration of Fowler's insured status, physicians at the University of Iowa recommended against any surgery because of Fowler's precarious physical condition.); Martonik v. Heckler, 773 F.2d 236, 240-41 (8th Cir. 1985). All of Ms. McCall's subsequent treatment is for chronic pelvic pain and the medications that she took for that condition.

While the Fowler Court specifically looked at records within one year, Ms. McCall's records regarding her pain and medication are all relevant to the underlying condition and warrant examination by the Court. 866 F.2d at 252. The most significant records occurred within 18 months after her date last-insured. The ALJ disposes of these opinions as deserving little weight because they fall outside of the period last-insured. Ms. McCall's pelvic pain resulted in narcotic usage which enhanced her disability before and after the date last-insured, March 31, 2007. Prior to the date last insured, Ms. McCall was prescribed an opioid Percocet, an opioid Vicodin, a codeine narcotic Tylenol 3, and a narcotic Darvocet. (Pl. Br. 62). Dr. Matul Sami, a

plain clinic physician, in treatment notes just three-months after the date last-insured indicated that "there was redness along the scar and that the palpitation was painful with trigger points." AR 667-669. At this time Dr. Sami sought to treat Ms. McCall with a nerve block for the pain, but there was no transportation available for her. Here, the Court finds that Ms. McCall's serious medications and continuing pelvic pain contributed to her disability.

The ALJ also erred in the decision to discount the opinion of Dr. William Miller regarding Ms. McCall's pelvic pain. Dr. Miller issued a 2008 report that Ms. McCall was "disabled from chronic pain" and could not function on medications that included morphine. AR 885. While the Court recognizes that opinions on disability are up to the Commissioner, the Court takes consideration of Dr. Miller's conclusions on the effects of medication and pain on Ms. McCall's ability to function. See O'Donnell v. Barnhart, 38 F.3d 811, 817 (8th Cir. 2003) ("consistent diagnosis of chronic . . . pain, coupled with a long history of pain management and drug therapy, was an objective medical fact supporting a claimant's allegations of disabling pain.") (internal quotations omitted).

Substantial evidence also weighs against the opinion of the ALJ's consultative medical expert Dr. Robert Smiley. "The opinions of doctors who have not examined the claimant ordinarily do not constitute substantial evidence on the record as a whole." Nevland v. Apfel, 204 F.3d 853, 858 (8th Cir. 2000). While the ALJ did not adopt Dr. Smiley's opinion wholesale, his opinion did have a significant weight on the RFC. AR 884-886. The role of the medical expert is to assist the ALJ in evaluating the medical evidence. See Hudson v. Barnhart, 345 F.3d 661, 666 (8th Cir. 2003) (noting that the role of the medical expert is to "aid the ALJ in evaluating the medical evidence"). Dr. Smiley altogether abdicates this duty by refusing to opine on how significant the effects of narcotic drugs would be on Ms. McCall saying "we can't go there." AR 1490. Dr. Smiley instead said that he felt that sedentary work was a "reasonable position" taking a "middle of the road course." AR 1502-1503. However, he acknowledged "it was quite possible" that Ms. McCall's pain would be greater than others and someone on that medication could "not be visibly intoxicated and still have trouble." AR 1495. The ALJ relied on Dr. Smiley's testimony, but not in the context of the record as a whole. However, the ALJ ignored some of Dr. Smiley's most pertinent suggestions about Ms. McCall "no[t] crawling" saying that she could crawl occasionally even though she was over 280 pounds and morbidly obese. AR 880, 1484. Here, the Court finds "overwhelming evidence" to suggest that Ms.

McCall's chronic pelvic pain and narcotic usage were disabling and the ALJ's RFC finding that she can do sedentary work including crawling is inconsistent with substantial evidence on the record as a whole.

The ALJ also erred in failing to properly consider Ms. McCall's inflammatory bowel disease. The record reflects that Ms. McCall's bowel condition would have had significant effects on her ability to work. Ms. McCall was experiencing multiple instances of diarrhea, up to ten times a day. AR 882-883. The episodes of diarrhea were not only frequent, but also long and could last for up to 30-40 minutes. AR 276. Ms. McCall's record indicates four treatment notes complaining of multiple stools per day and long duration diarrhea. AR 270, 679, 690. Needing to use the restroom frequently and for the duration that Ms. McCall indicates would have a significant effect on her ability to maintain a proper workflow. See Standfast v. Astrue, No. 11-5047-CV-SW-REL-SSA 2012 U.S. Dist. LEXIS 87777 at *21(W.D. Mo. Jun. 5 2012) (saying "the need to use the bathroom every 35 to 40 minutes, constant diarrhea up to five days per week for three hours at a time, short term memory loss, and constant pain and cramping. The vocational expert testified that such a person could not work.") (internal citations omitted). The Court finds that Ms. McCall's irritable bowel condition adds significantly to the substantial evidence of her claim of disability.

Finally, the Court disagrees with the Commissioner's contention that the ALJ did not err in discounting Ms. McCall's credibility because of her daily activities. At her initial hearing, Ms. McCall testified that she suffers from "really sharp shooting pain that comes into [her] pelvic area like when [she] does a whole lot or if [she] sits." AR 31. Ms. McCall also testified that the pain was so bad that she can only "stand for 30-45 minutes" and then she has to sit down. AR 33. The pain does not even allow for Ms. McCall to sit through the entirety of one of her son's drama performances at school. AR 32. Ms. McCall also testifies that even sitting for long periods can require her to "lay down" and "put her legs up a little bit to try and elevate them taking some pressure off of the pelvic area on my leg." AR 31. The record suggests Ms. McCall's husband even has to assist her with simple tasks like cooking at home, putting on her shoes, and grocery shopping. AR 33. While the Commissioner points out that Ms. McCall may have been able to accomplish these tasks occasionally, they do not rise to the level of negating a finding of disability. See Draper v. Barnhart, 425 F.3d 1127, 1131 (8th Cir. 2005) (finding daily activities such as doing household chores of laundry, grocery shopping, and mowing the lawn are

not inconsistent with a finding of disability).  The Court finds that Ms. McCall's limited daily activities and need for consistent help from her family support a finding of disability. Therefore, since the Court has found "overwhelming evidence" supports a finding of disability on Ms. McCall's claims of pelvic pain, medication effects, and irritable bowel syndrome, the decision shall be reversed for the award of benefits in the appropriate amount.

## VI. Conclusion

For the reasons stated by the Court on the record at the conclusion of the oral argument held on January 9, 2018, and as set forth herein, the Court finds that the Commissioner's determination that Ms. McCall was not disabled is not supported by substantial evidence on the record as a whole and it is therefore reversed for the award of benefits.  Judgment shall be entered in favor of the Plaintiff and against Defendant.

Accordingly,

IT IS, THEREFORE, ORDERED that the decision of the Commissioner is reversed and benefits should be awarded in the appropriate amount.

Dated this 13th day of January, 2018, at Jefferson City, Missouri.

WILLIE J. EPPS, JR.
United States Magistrate Judge